**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **V. DRAKE**<br>    *Plaintiff*<br><br>**v.** | **Case Number:** _____ |

**7-ELEVEN INC., RAKHEE P. SHARMA, PAWAN R. SHARMA,**
**TEXAS LOTTERY COMMISSION, MAVIS L. WANCZYK, MULTI-STATE**
**LOTTERY ASSOCIATION, WAYNE DOLEZAL, AND GARY GRIEF**

    *Defendants*

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, V. Drake, hereinafter referred to as "Plaintiff" or "Drake" and

brings this action against the above Defendants as alleged herein.

## PARTIES

1.    On information and belief MULTI-STATE LOTTERY ASSOCIATION

("MUSL") is a corporation that administers Powerball is an association of member

lotteries with its principal place of business at: 4400 N.W. Urbandale Drive, Urbandale,

Iowa 50322. MUSL may be served with process by its registered agent Wayne Dolezal,

4400 N.W. Urbandale Drive, Urbandale, Iowa 50322.

2.    MUSL is in the business of, among other things, operating lottery games.

MUSL's members include the Arizona Lottery, Arkansas Lottery, Colorado Lottery,

Connecticut Lottery Corporation, D.C. Lottery, Delaware State Lottery, Florida Lottery,

1

Hoosier Lottery, Idaho Lottery, Iowa Lottery, Kansas Lottery, Kentucky Lottery Corporation, Louisiana Lottery Corporation, Maine Lottery, Minnesota State Lottery, Missouri Lottery, Montana Lottery, Nebraska Lottery, New Hampshire Lottery Commission, New Mexico Lottery Authority, North Carolina Education Lottery, North Dakota Lottery, Oklahoma Lottery, Oregon Lottery, Pennsylvania Lottery, Rhode Island Lottery, South Carolina Education Lottery, South Dakota Lottery, Tennessee Education Lottery, Georgia Lottery, U.S. Virgin Islands Lottery, Wisconsin Lottery, and West Virginia Lottery.

     3.     Defendant, GARY GRIEF, ("GRIEF") is an individual who is a citizen of Texas. At all times relevant to this suit, GRIEF was employed by and served as the Executive Director of the LOTTERY COMMISSION. GRIEF may be served at the offices of the LOTTERY COMMISSION at 611 E. 6 Street, Austin, Texas 78701. The Court has jurisdiction over Mr. Grief. The party to serve is Gary Grief, who may be served with process by serving: The Texas Secretary of State, Citations Unit, 1019 Brazos Street, Room 214, Austin, Texas 78701.

     4.     On information and belief Texas Lottery Commission ("TLC") is a State Agency which may be served by serving the Attorney General, Greg Abbott, Office of the Attorney General, 300 W. 15 Street, Austin, Texas 78701.

     5.     On information and belief 7-Eleven, Inc is a corporation that is doing business in the state of Georgia that can be served with summons and complaint through its agent of service: Corporate Creations Network Inc, 1233 SHELBURNE ROAD, SUITE 400, SOUTH BURLINGTON, VT, 05403, USA.

2

6.      On information and belief Rakhee P. Sharma and Pawan R. Sharma are 7-Eleven franchises owners who can be served with summons and complaint through its agent of service by serving Rakhee P. Sharma or Pawan R. Sharma: 8312 Bartley Cir., Plano, Texas 75025.

7.      On information and belief Mavis L. Wanczyk is the Powerball lottery 2017 winner of the Seven Hundred Million dollar Powerball. The last known address for Ms. Wanczyk is: 23 Brightwood Street, Chicopee, MA 01020. Plaintiff might have to seek a Court order and serve Ms. Wanczyk by publication, because the Plaintiff attempted to serve Ms. Wanczyk with a notification of this controversy unsuccessfully.

## JURISDICTION & VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over MUSL because, *inter alia*, MUSL has committed, aided, abetted, contributed to, and/or participated in the commission of deceptive and unfair practices in this judicial district and elsewhere that led to foreseeable harm and injury to the Plaintiff, Eric Drake.

10.      This Court also has personal jurisdiction over MUSL because, among other things, MUSL has established minimum contacts within the forum such that the exercise of jurisdiction over MUSL will not offend traditional notions of fair play and substantial justice. On information and belief, MUSL does business in the State of Georgia. On information and belief, the acts and transactions complained of herein were, in part, carried out, made effective, and/or had effect on consumers like the Plaintiff in the State of Georgia.

11.      Venue is proper in this judicial district pursuant to 28 USC §§ 1391(b), 1391(c) and 1400(a), in that MUSL has committed acts of deceptive and unfair practices in this judicial district, and the Court has personal jurisdiction over MUSL.

12.      Plaintiff invokes this Court's jurisdiction of this action also under, 15 USC §2301, 28 U.S.C. § 1331, §1332, §1343. And supplemental jurisdiction under 28 U.S.C. § 1367, over state law violations.

13.      When federal jurisdiction is founded upon diversity of citizenship under 28 U.S.C.S. § 1332, the district court is bound to apply state substantive law to plaintiff's claims. Plaintiff pleads supplemental jurisdiction under 28 U.S.C. § 1367, over state law

4

claims. Plaintiff pleads multiparty action pursuant to 28 USC §1391(g), and 28 USC §1391(a)(1), (b)(1). 42 USC §1981, and 42 USC §1983.

14.     This Court has jurisdiction pursuant to 28 U.S.C § 1332 because the amount in controversy greatly exceeds $75, 000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states, creating diversity of jurisdiction.

15.     Plaintiff invokes the Court's jurisdiction of this action under USC § 1331, 1332. Plaintiff claims federal jurisdiction pursuant to Article III § 2, which extends the jurisdiction to cases arising under the U.S. Constitution.

16.     Federal Trade Commission Act 15 U.S.C. §§ 41-58 [(FTC Act) (15 USC §45) Section 5] is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States, which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of consumers, "Consumer Protection Laws." Federal Jurisdiction is conferred on this Court by the Federal Trade Commission Act (FTC Act) (15 USC §45), Section 5. Plaintiff also pleads that Defendant Nordstrom Inc violated the Lanham Act 15 USC §1125.

17.     Plaintiff invokes the Court's jurisdiction of this action under USC § 1331, 1332. Plaintiff claims federal jurisdiction pursuant to Article III § 2, which extends the jurisdiction to cases arising under the U.S. Constitution.

18.     This Court also has jurisdiction to 28 U.S.C. §1331, §1332, there is complete diversity of citizenship between the parties.

19.     Although Rakhee P. Sharma and Pawan R. Sharma are individuals, they are relevant to the above proceeding because they are 7-Eleven franchises owners who

5

are indispensable to the above litigation. Since the Court has jurisdiction over 7-Eleven, Inc., and 7-Eleven LLC the Court likewise have jurisdiction in this case over the franchises owners. This case also includes violation of Plaintiffs 14th Amendment rights.

20.     The Powerball is a nation wide game that is available in the state of Georgia. This controversy is pursuant to the franchises owners hiring undocumented / illegal alien workers and or untrained workers who gave the Plaintiff incorrect information regarding the cut-off time or closing time to play the Powerball lottery.

21.     Ms. Wanczyk won the August 23, 2017 Powerball lottery that was 700 million dollars. She resided in the state of Massachusetts, and the MUSL paid her winnings through the MSLC. Since this controversy deals with a multi-state nation wide game that the Massachusetts Lottery and Texas Lottery participate in, the Plaintiff sues the Texas Commission and Gray Grief. The Plaintiff sues MUSL, 7-Eleven, 7-Eleven LLC, SWCS, and Rakhee P. Sharma and Pawan R. Sharma for the damages.

22.     Jurisdiction is also allowed in the above cause of action because it asks a federal question and is also a diversity action.

## FACTUAL ALLEGATIONS

23.    This lawsuit involves the MUSL, Texas and Massachusetts State Lottery Commissions, 7-Eleven, and one of its franchises owned by Defendants Rakhee P. Sharma and Pawan R. Sharma and SWCS. In August of 2017, the Powerball had reached $700,000,000.00 (Seven Hundred Million Dollars). This case is not about picking winning numbers but the focus of this case is about the fact that the Plaintiff as a citizen has the right to play the Powerball like any other citizen, but those rights were taken away from him by the defendants negligence, customs, and policies.

24.    Moreover, the majority of the lawyers that the Plaintiff conferred with were only interested in how many numbers that the Plaintiff successfully picked. This two dimensional thinking was a problem for the Plaintiff. When faced with the jury, the Plaintiff plans to argue that if he failed to pick any of the correct numbers that it would not matter in this case, because the focus is not numbers but restriction of rights. Rosa Parks case wasn't about a seat on a bus, but her right as a citizen of the United States.

25.    The Powerball game playslips that a consumer fill out to acquire a Lotto ticket does not have the cut-off or closing time when the game can no longer be played on the playslips, therefore the Plaintiff had to asked a clerk employed at the 7-Eleven convenience store referenced herein in Carrollton, Texas, what was the cut-off time to play the Powerball lotto game. The clerk advised the Plaintiff of the wrong time, 9:30 p.m., and when the Plaintiff attempted to play his numbers at 9:15 p.m. on August 23, 2017, he was told that the ability to play the Powerball lottery was closed. The 7-Eleven convenience store referenced herein in Carrollton, Texas shall be referred to as '7-11S.'

26.    The Plaintiff returned to his home, and watched the Powerball drawing. Drake discovered the winning numbers. The very next day on August 24, 2017, the

7

Plaintiff returned to the 7-11S and spoke with the store manager, who he believes was Defendant Rakhee P. Sharma about the matter. Rakhee said, "I am sorry about that, the employee gave you the wrong time." She further stated that the person that the Plaintiff spoke to was new and did not know the lottery rules. To the best of the Plaintiffs recollection, Defendant Sharma further said that the employee was new in the Country, but she didn't state whether he was a U.S. citizen. Defendant Rakhee went on to say that this new employee that gave the Plaintiff the wrong information did not know the lottery rules or the correct cut-off time. Defendant Rakhee then asked if she could give the Plaintiff a free cup of coffee after her employee caused the Plaintiff to loose millions.

27.    Plaintiff wrote letters to Defendants Sharma, 7-Eleven, and TLC inform-ing all parties of the controversy, but neither party responded to the Plaintiffs letters. Plaintiff believed the unknown 7-11S worker was an illegal alien. *See* **Exhibits 1 – 4**.

28.    Immigration and Customs Enforcement (ICE) agents targeted dozens of 7-Eleven stores in 2017, arresting 21 people in a nationwide immigration sweep. The state of Texas was part of the ICE round-up and raids. There is little doubt in the Plaintiffs mind that the employee of the 7-Eleven store in question would have been also a target of this federal raid. And after my compliant to 7-Eleven the unknown employee vanished.

29.    The Immigration and Customs Enforcement supervisor made a statement regarding the raids and why they were enacted:

> "Businesses that hire illegal workers are a pull factor for illegal immigration and we are working hard to remove this magnet. ICE will continue its efforts to protect jobs for American workers by eliminating unfair competitive advantages for companies that exploit illegal immigration,"

8

30.     7-Eleven, Inc and or 7-Eleven LLC shall be referred to hereon simply as "7-Eleven." 7-Eleven comment regarding the raids by ICE was that the company had nothing to do with their franchise owners, which was an attempt to distance the company from the practice of hiring illegal immigrates. A spoke person for 7-Eleven further stated:

"The individual stores are franchises that belong to independent business owners, who "are solely responsible for their employees, including deciding who to hire and verifying their eligibility to work in the United States."

31.     7-11S was negligent in hiring undocumented / illegal aliens and or untrained workers who gave the Plaintiff the incorrect cut-off or closing time for the Powerball August 2017 lottery game. The Plaintiff plea that 7-Eleven is vicariously responsible for their franchises owner's conduct. MUSL is vicariously responsible for its agents, (7-Elevens) and the Lottery Commissions and representatives' conduct.

32.     As a result of the conduct of the 7-Eleven's franchises, the Plaintiff was injured as a result of being provided false, misleading, and incorrect information on when the Powerball lottery game closed.

33.     The back of the Powerball game or playslips, which are used to play, *promote*, and *advertise* the Powerball game does not include a cut-off time to play the game to consumers. The game or playslips as seen in the annexed **Exhibit 5** provides information to consumers, but there is no indication of any cut-off or closing time to play the Powerball lottery. Thus, the MUSL and Lottery Commissions are responsible for not providing this critical information to consumers of when the game closes or its cut off time. The MUSL and Lottery Commissions are guilty of advertising and promoting a lottery game without posting fundamentally important information to play the game.

9

34.     Consumers are baited by the amount of money offered to play these lottery games, just as the Plaintiff was baited, but the Plaintiff was not provided that critical information of knowing the Powerball lottery cut-off time to play the game or when the Powerball closes. The MUSL does not provide even instructions of how to contact the Lottery Commissions for a cut-off time or closing time to play their games.

35.     7-Eleven is a bonafided legal representative of the MUSL and the Lottery Commissions. The 7-Eleven stores have Lottery supplies in their stores, which include playslips, scratch off games, and other Lottery products to ensure consumers that the 7-Eleven stores are a genuine representative of the MUSL and Lottery Commissions.

36.     The Powerball playslips are misleading consumers through commerce because it acts as an *advertisement* but does not furnish enough information for consumers to be properly informed to play the Powerball game such as to the cut-off time to play the Powerball lottery game or even a statement notifying consumers to check with their state Lottery Commissions for the cut-off or closing times to play the lotto games.

37.     Plaintiff did not have an opportunity to play the August 23, 2017 Powerball like other consumers who did play the game, even if they did not pick the winning numbers, because of the negligence of Defendants MUSL and its agents, Defendants 7-Eleven, and Sharma. Thus, as one alternative to compensate the Plaintiff for his damages, he is requesting is that the August 23, 2017 Lotto Powerball drawing be rescinded as pled herein. *See* Plaintiffs Declaration **Exhibit** "**A**."

38.     Defendant Mavis L. Wanczyk won the 2017 August Powerball. The Plaintiff wrote a letter to Defendant Mavis L. Wanczyk, and tried to serve a notification letter on Ms. Wanczyk. Plaintiff letter to Ms. Wanczyk was notifying her of the controversy, but the process server, who was a sworn peace officer, could not locate Ms. Wanczyk after she won the lottery even after multiple attempts.

39.     In an effort to obtain the name of the employee at the 7-11S who the Plaintiff believe wasn't a United States citizen, but nevertheless was employed at the 7-Eleven store owned by Defendant Sharma, the Plaintiff to file a Rule 27 to take the deposition of Defendant Rakhee P. Sharma to obtain the name of the undocumented / illegal alien worker and or untrained worker. However, the court denied the Plaintiffs Rule 27 to Perpetrate Depositions prior to suit. Plaintiff did serve a copy of the Rule 27 on Defendant Sharma and 7-Eleven.

### FIRST CAUSE OF ACTION

**COUNT 1.**   **NEGLIGENT AND NEGLIGENT MISREPESENTATION**

40.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

41.     MUSL, SWCS, 7-Eleven, and Sharma were negligent and misrepresented facts to the Plaintiff.

42.     Defendant MUSL was negligent in not placing on the Powerball game playslips the cut-off time or closing time to play the August 2017 Powerball lottery game. Annexed is **Exhibit 5** original playslips for the Powerball lottery. The game playslips contained information, but it does not state the time that the Powerball game is cut-off or closed for the public to play the lottery game. This was important information to the Plaintiff, which he sought to obtain it from an agent of MUSL, SWCS, 7-Eleven, and Defendant Sharma to his demise.

43.     On August 23, 2017 the Plaintiff asked an employee of a 7-Eleven store (7-11S) located at 2230 Marsh Lane, in Carrollton, TX 75006 what was the cut-off or closing time to play the Powerball lottery game. The employee advised the Plaintiff 9:30 p.m. When the Plaintiff attempted to play the August 23, 2017 Powerball at 9:15 p.m., he was told that the game was closed and that the game closed at 9:00 p.m. As such, an agent, or representative of the Defendant MUSL provided the incorrect cut-off or closing time to the Plaintiff to play the August 2017 Powerball to his demise.

44.     On August 23, 2017 the Plaintiff returned to his home and watched on television the Powerball lottery drawing to the Plaintiffs demise. The next day, Plaintiff

drove to the 7-Eleven store where the employee told the Plaintiff the wrong cut-off time and spoke with the store manager, Rakhee P. Sharma on August 24, 2017. Defendant Sharma said that she was sorry that her employee, who was new provided the Plaintiff the wrong cut-off time to play the Powerball lottery. Defendant Sharma, a 7-Eleven franchise owner was negligent in hiring an undocumented/illegal alien or untrained employee to work directly with the public.

45.     Since Defendant Sharma is an authorized agent of the Texas Lottery, the MUSL, SWCS, TLC, 7-Eleven is responsible for its agents conduct. MUSL was negligent in not placing the cut-off or closing time on the back of the game playslips. MUSL was also negligent in not advising the consumers on the back of the Powerball game playslips that they should check with their state lottery commissioners offices for information regarding the cut off or closing time to play the Powerball.

46.     Defendant MUSL, TLC, SWCS, 7-Eleven, and Rakhee P. Sharma, its employees, agents, and representatives were negligent of one or more of the following negligent acts and/or omissions:

       a).     Defendant Rakhee P. Sharma, a franchise owner of a 7-Eleven store referenced herein was negligent in hiring an undocumented / illegal alien to work with the public at the 7-Eleven store referenced herein;

       b).     Defendant Rakhee P. Sharma, a franchise owner of a 7-Eleven store referenced herein was negligent in hiring untrained workers or employees to work with the public at the 7-Eleven store referenced herein;

       c).     Defendant Rakhee P. Sharma, a franchise owner of a 7-Eleven store referenced herein was negligent in hiring an untrained, undocumented, illegal alien worker that provided the Plaintiff with the wrong cut off or closing time to play the August 23, 2017 Powerball lottery;

13

d).     Defendant MUSL, SWCS, and 7-Eleven was negligent in not employing a training program for its franchise owners, and if it does, MUSL, SWCS, and 7-Eleven was negligent for not employing an effect training program for its franchise owners like Defendant Sharma;

e).     TLC was negligent in not employing a better training program for its agents and representative, and if it does, TLC was negligent for not employing an effect training program for its agents and representatives;

f).     MUSL was negligent in not employing a better training program for its agents and representative, such as TCL, SWCS, and 7-Eleven, and Sharma, and if it does, MUSL was negligent for not employing an effect training program for its agents, representatives, and Commissions;

g).     MUSL was negligent for failing to properly inform consumers in writing on the back of the playslips and in the convenience stores that promote their gaming products by posting signs or posters of the cut off time or closing time to play the Powerball lottery game so that new or inexperienced employees could not provide incorrect information to consumers as what occurred to the Plaintiff;

h).     Rakhee P. Sharma failure to warn the Plaintiff and other consumers that the store hires undocumented / alien workers that might not understand the English language, or the workers might not be U.S. citizens, and might not be properly trained or provide correct answers to regarding the Lottery;

i).     Even though Defendant 7-Eleven has alleged that franchises are in business for their own self's, Defendants SWCS, 7-Eleven is nevertheless liable for the actions of its franchises that caused injury to Drake being that these franchises are doing business by displaying the 7-Eleven logo, which would make consumers believe that it is the Defendant 7-Eleven corporate owned stores instead of a self-employed single person;

14

j).     MUSL, TCL, SWCS, and 7-Eleven, and Sharma are equally liable for those who represent it and make profit from its arrangements when one of its agents, or representatives causes injury to a consumer. MUSL failed the Plaintiff and other consumers by not simply placing on the back of the game playslips in writing the cut off or closing time to play the Powerball lottery, or at least instructions on the back of the playslips that the consumer should contact their state lottery commissions for cut off or closing times to play the Powerball lottery;

k).     Defendants MUSL, TCL, SWCS, and 7-Eleven, and Rakhee P. Sharma and Pawan R. Sharma were negligent and put profits before the good will and ethical standards of consumers, including the Plaintiff;

l).     Defendants MUSL, TCL, SWCS, and 7-Eleven, and Rakhee P. Sharma and Pawan R. Sharma failing to abide by state and federal consumer laws;

m).     Defendants TLC knew at the time it printed the Powerball game play slips that the playslips did not contain the vital information of when the game closes to the Plaintiffs demise. MUSL was also aware of this problem.

n).     Defendant Rakhee P. Sharma knew at the time the undocumented / alien worker or the new untrained employee advised the Plaintiff the wrong time that the Powerball closes that the employee wasn't trained properly, wasn't versed in the English language, which resulted in the Plaintiffs demise. Franchises owner, Defendant Sharma was careless and wasn't concerned about the consequences of her actions but only profit by hiring individuals who would accept less pay and no benefits. An employer cannot legally pay benefits to undocumented / illegal alien workers.

o).     The undocumented / alien worker had no badge to indentify his name. Defendant Rakhee P. Sharma failed to warn or alert consumers that the

15

employee who gave the Plaintiff the wrong time for the cut-off or closing to play the Powerball lottery game that he was a new employee in training. Moreover, Defendant Sharma failed to supervise the undocumented / illegal alien worker or untrained worker that she knew was not versed in the English language or the lottery rules and regulations.

p).   All off the Defendants above failed to be truthful, informative, and honest with the Plaintiff and other consumers;

q).   MUSL failed to properly oversee, manage, direct, and train its agents and representatives which resulted in the Plaintiffs own demise.

47.   Plaintiff is entitled to compensation for Defendants negligence and negligent misrepresentations as described herein in this petition. Plaintiff damages are substantial because of the carless actions of the Defendants. If the Plaintiffs alternative for compensation is not acceptable as pled in this petition, Plaintiff sues the Defendants MUSL, SWCS, 7-Eleven, and Sharma for the total sum of $2,800,000,000.00, which is four (4) times the amount of the August 23, 2017 Powerball lottery for the deceptive, unfair, and fraudulent information provided to the Plaintiff from Defendant Sharma's undocumented / illegal alien worker who was also untrained. The Plaintiff also seeks exemplary and special damages against the Defendants for knowingly with intent not to properly train its agents, employees, staff, and Commissions which resulted in significant mental anguish to the Plaintiff.

## SECOND CAUSE OF ACTION

**COUNT 2.   GROSS NEGLIGENCE**

48.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

49.   Defendants MUSL its, agents, employees, and representatives were grossly negligent because they knew or should have known that the cut off time or closing time to play the Powerball was not assessable to consumers on the game playslips, or posted in the 7-Eleven stores that market and sell lotto tickets.

50.   SWCS, 7-Eleven, and Rakhee P. Sharma are agents for the MUSL and TLC. The posting of signs in plain sight of the cut-off or closing time to play the Powerball Lottery in the 7-Eleven stores was information that is vital to playing the game and would have prevented the lost that occurred to the Plaintiff.

51.   Powerball lottery makes millions of dollars every year. However, even after the Plaintiff wrote letters to the TLC and to its agents Defendant 7-Eleven and Defendant Sharma, there were no efforts by MUSL or TLC or any other lottery commissions to have game playslips reprinted to incorporate the cut-off time to play the Powerball or any other of its many other lottery games. Defendant's conduct is gross negligence.

52.   Rakhee P. Sharma was grossly negligent in hiring an undocumented/ illegal alien worker and or untrained worker that provided false and misleading information to the Plaintiff.  Defendant Rakhee P. Sharma was grossly negligent in not properly training her employees before allowing them to interact with consumers, and

17

providing consumers with false and misleading information. Even after complaining to 7-Eleven and the TLC in writing of the August 23, 2017 incident, it has not changed its playslips to include a cut-off time for the Powerball lottery. Nor did the 7-Eleven, TLC, or Rakhee P. Sharma respond to the letters the Plaintiff wrote them. Thus, there is no intent from these defendants to change their conduct that caused Plaintiff injuries.

53.    Moreover, the principle of *res ipsa loquitur* applies in this case. Plaintiff is entitled to the doctrine of *res ipsa loquitur* "if the evidence affords a rational basis upon which the jury can conclude that the elements of the doctrine required under state substantive law are present." ***Id***. And in this case, Georgia law supports *res ipsa loquitur*. The Plaintiff was injured as a result of Defendants MUSL failure to print on its games playslips the cut-off or closing times for the Powerball lottery. The Plaintiff was further injured on account of 7-Eleven's non-caring approach to its franchises owners of not having an opposition to its franchise owners hiring undocumented/illegal alien workers, and or untrained workers. Defendants Sharma failures caused injury to the Plaintiff by her hiring an undocumented/illegal alien worker and or untrained worker to undoubtedly save money. For the millions of dollars that the MUSL, TLC, and 7-Eleven make as profit off the Lottery, the implementation of the cut off time or closing on games playslips of when the game closes to the public would not have been unreasonable, but necessary to ensure consumers such as the Plaintiff are not injured. However, the Defendants were not concerned about informing the public; just profits.

54.    Defendants MUSL, SWCS, 7-Eleven and Rakhee P. Sharma conduct was willful and wanton, without regards for providing factual information, but a focus on profits only. As a result, the Plaintiff was injured in the follow ways:

18

1).     By MUSL through its agents, representatives, and employees willfully and wantonly failing to post the cut-off or closing times on the playslips of the lottery games to play the Powerball Lottery;

2).     By MUSL through its agents, representatives, and employees willfully and wantonly failed to include the cut-off and or closing times to play the Powerball and or Lottery games on its playslips or by signs at the agents stores such as 7-Eleven stores in plain sight for all consumers to read;

3).     By MUSL failing to train its agents, representatives, and employees to properly inform the public when the cut off or closing times for their games such as the Powerball lottery and other Lottery games;

4).     By the TLC and 7-Eleven failing to respond to the Plaintiffs letters, which indicate that TLC, 7-Eleven, and even the MUSL have no intention of correcting its failures which resulted in the injury caused to the Plaintiff;

5).     By 7-Eleven failing to properly train its franchisees, Defendant Sharma even though 7-Eleven is an authorized agent of MUSL and TLC;

6).     By TLC and 7-Eleven not responding to the Plaintiffs letter indicates that these defendants sought wantonly to cover up and or hide the Plaintiffs losses and the harm caused to him and the fact that Defendant Sharma hire undocumented/illegal workers and untrained workers to serve the public;

7).     Failure to take adequate precautions to reasonably to protect the Plaintiff and the general public from such re-occurrences demonstrates gross negligence by the Defendants;

8).     MUSL failure to order the reprinted of games playslips to incorporate cut-off and closing time to play the Powerball, TLC failure to request MUSL to have playslips to incorporate cut-off and closing time to play Powerball, and MUSL failure to properly train, supervise and/or instruct its Commissions, and TLC failure to properly train, supervise and/or instruct

its agents such as 7-Eleven, and 7-Eleven failure to properly train, supervise and or instruct its franchises owners, its agents, representatives, and employees is gross negligence.

55.     As a direct and proximate cause of their actions, Defendants named herein are liable to the Plaintiff for punitive damages. Plaintiff seeks such damages against the Defendants as pled herein.

## THIRD CAUSE OF ACTION

### COUNT 3.     VIOLATION OF 15 USC §§ 41-58, THE FTC ACT AND THE LANHAM ACT 15 USC § 1125.

56.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

57.     Defendant MUSL violated the Federal Trade Commission Act (FTC) 15 USC §§ 41-58 by its unfair, deceptive acts and practices by not properly informing consumers of the cut-off or closing time to play the Powerball lottery and through its website, both affecting commerce.

58.     Defendant MUSL advertisements on its lottery playslips and its website is misleading in that the playslips and especially the website provides lots of information, but does not inform consumers of the cut-off or closing time to play the Powerball or other lottery games. MUSL is guilty of failures to disclose this important information where it can be readily obtained.

59.     Defendant MUSL website is designed to cause the consumer who views it to be excited on becoming a millionaire to generate a desire for the Plaintiff and other consumers to spend millions of dollars on MUSL lottery games, but MUSL failed to

20

spend a small percentage of their earnings to inform the Plaintiff and other consumers of the cut-off or closing time to play the lottery games which they administer and oversee.

60.    Because the Defendants' website is available to consumers nationwide, it advertises its products unfairly being that MUSL is fully aware that consumers would not know the cut-off or closing time of the Powerball and other games without asking one of its agents, as the Plaintiff did, because 7-Eleven stores are agents, representatives of Defendant MUSL. Thus, Defendant MUSL is knowingly violating of 15 USC §§ 41–48.

61.    Defendant MUSL unfair and misleading advertising through its playslips and website have injured the Plaintiff as well as other consumers, in particularly in the state of Georgia.

62.    Defendants MUSL unfair and misleading advertising statements and omissions violate sub-section (a) of the FTC Act. The Defendant MUSL also violated the Lanham Act 15 USC § 1125:

> (1) Any person who, on or in connection with any goods or ***services***, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, ***false or misleading description of fact***, or ***false or misleading representation of fact***, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, ***misrepresents the nature, characteristics, qualities,*** or geographic origin of his or her or another person's goods, ***services***, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

21

63.     Defendants MUSL unfair and misleading advertising statements and omissions and failure to disclose are likely to continue to injure other consumers.

64.     Pursuant to 15 USC §1117, Plaintiff is further entitled to recover from Defendant MUSL the damages sustained by Plaintiff as a result of Defendants' acts in violation of 15 USC §§ 41–48(a).

65.     Pursuant to 15 USC §1117, Plaintiff is further entitled to recover from Defendant MUSL the costs of this action. Moreover, Plaintiff is informed and believes, and on that basis alleges, that Defendants' conduct was undertaken willfully and with the intention of causing harm to the Plaintiff, deception, and misleading to make profits from the Plaintiff and other consumers.

## **FOURTH CAUSE OF ACTION**

### **COUNT 4.     DECEPTIVE AND UNFAIR TRADE PRACTICES (STATE)**

66.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

67.     Pursuant to Georgia state law and federal law, Plaintiff pleads a cause of action against the Defendants MUSL, SWCS, 7-Eleven, and Sharma, its management, agents and representatives and employees for deceptive and unfair trade practices through interstate commerce.

68.     The Plaintiff is a 'consumer' as defined under the Georgia Deceptive Trade Practices Act and the Vt. Stat. Ann. tit. 9, §§ 2451 through 2480g in that he sought to play the nationwide lottery game, the Powerball. The Defendants named herein engaged in acts or practices declared unlawful by Vt. Stat. Ann. tit. 9, §§ 2451 through 2480g (Georgia Deceptive Trade Practice Act). Plaintiff further shows as follows:

a. Defendant Rakhee P. Sharma, and her partners, employees, agents, and its representative's actions were deceptive when they failed to disclose the fact that she had hired undocumented/illegal alien workers and or untrained workers to work with the public at her 7-11 franchise store.

b. It was unfair practice for Sharma employees to give the Plaintiff the incorrect time that the Powerball Lottery closes to play the game on August 23, 2017.

c. It is an unfair and deceptive practice for 7-Eleven to allow its franchise owners, Defendant Sharma to hire undocumented/illegal alien workers, and or untrained workers when the franchise owners are using the 7-Eleven logo and making consumers feel that they are assured that they are dealing with a creditable company, corporate owned, but in fact, consumers are dealing with an individual.

23

d.  It was deceptive and unfair for the MUSL not to incorporate in its playslips the cut-off time or closing time to play the Powerball lottery games on the back of the game slips in August of 2017. An 'Unconscionable Action,' which is a fraud. This type of action is a violation under the Georgia Protection Act, Vt. Stat. Ann. tit. 9, § 2453(a) (prefatory language), and equitable relief pursuant to Vt. Stat. Ann. tit. 9, § 2458. Attorney fees are allowable: Vt. Stat. Ann. tit. 9, § 2461(b).

Restitution Pursuant to Georgia Deceptive Trade Practice Act:

Vt. Stat. Ann. tit. 9, § 2458(b)(2).

69.  The actions by Defendant MUSL of failing to incorporate the cut-off or closing time or when the Powerball lottery game closes on the game playslips or in the stores sell the lottery product by posting signs of the cut-off or closing time through its agents and representatives were unfair and deceptive practices against the Plaintiff and consumers in general, which caused Plaintiff injury through their reckless and negligent actions with the full knowledge that this information was required; to know when the Powerball lottery game closes. This breach was a producing cause of the Plaintiffs damages. In fact, "[e]ven a truthful statement may be deceptive if it has a capacity or tendency to deceive." The capacity to deceive can be found without a finding that anyone has actually been deceived, *State ex rel. Mcleod v. Brown*, 294 S.E. 2d 781, 783.

70.  Georgia Protection Act for consumers allows compensatory damages pursuant to Vt. Stat. Ann. tit. 9, § 2461(b): (A) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division. The statute allows for punitive damages: Vt. Stat. Ann. tit. 9, § 2461(b) - treble damages. The lottery playslips are disturbed in commerce to 47 states including Georgia. Therefore the action of MUSL is affecting commerce. The act also allows attorney fees under Section Vt. Stat. Ann. tit. 9, § 2461(b). Vt. Stat. Ann. tit. 9, § 2451a(b) defines "goods" and "services" broadly to include "intangibles" and "other property or services of any kind."

24

a. False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful and are subject to action by the consumer protection division under the federal statute: Fed. Trade Commission Act 15 U.S.C. §§ 41-58.

**FEDERAL UNFAIR AND DECEPTIVE TRADE PRACTICES**

71.     Defendant MUSL also violated Federal Trade Commission Act (FTC Act) (15 USC §45) Section 5, [5(a)] because the Powerball Lottery invites consumers nationwide to play its games, but fail to inform the public when its cut off or closing time to play the game which is of upmost importance. The deceptive and unfair practices are:

1.     Without knowledge of the cut-off or closing time, the Plaintiff and other consumers could miss playing their numbers, which could cost them millions, as it has the Plaintiff;

2.     MUSL agents hiring undocumented/ illegal alien workers and or untrained workers who are unable to speak the English language well, and who do not know the rules of the Lottery is a receipt waiting to create a problem, as in the case at bar;

2.     Injury to consumers cannot be reasonably avoided because the MUSL apparently have decided not to reprint lottery playslips to incorporate the cut-off time or closing time for the lottery games, in particularly the Powerball Lottery game.

3.     As set forth in the Plaintiffs petition, the MUSL through its employees, agents, Commissions, and representatives are willing to mislead and misrepresent to the public that their agents which are convenience stores in the United States are trained to provide the correct information about their products, including the Powerball lottery, and other lottery games, and scratch off games. Factually, many employees of convenience stores

25

> are not trained to answer basis questions regarding cut-off times to play
> the Powerball or other lottery games.

4. Since MUSL, SWCS, TLC, and 7-Eleven are not concerned about its
franchises hiring undocumented/ illegal alien workers, and or untrained
workers, and the franchises are not concerned about hiring undocumented
/illegal alien workers, and or untrained workers these defendants
misleading representations, omissions, and practices are material.

5. The failure to provide information that is critical to playing the Lottery
games is not outweighed by the countervailing benefits to consumers.

72. Pursuant to the deceptive trade practices acts as pled herein, an unfair or
deceptive acts or practices, the Plaintiff do not have to show or prove that a claim or
representation was intended to deceive, the Plaintiff only need to present to the Court that
Defendants and its management, agents, employees, or representatives actions had the
capacity effect or tendency to deceive. The capacity to deceive can be found without a
finding that anyone has actually been deceived:

a). Plaintiff only has to establish that an act or practice is unfair or deceptive;

b). Plaintiff must demonstrate that the practice has an impact upon public
interest.

73. Since the public in general could be persuaded to accept the advise of an
employee, staff member, or worker who is actually an undocumented/ illegal alien who is
also untrained, believing that they should trust these workers because the place of
business has the familiar 7-Eleven logo, this type of conduct would have an impact on
other unsuspecting victims of such deceptive and unfair actions through commerce.

74. Plaintiff suffered mental anguish as a result of the Defendants named
herein deceptive acts. Defendant's behavior was carried out knowingly with intent to

deceive the Plaintiff as well as other consumers. Defendant MUSL, SWCS, 7-Eleven, and Sharma violated Georgia Fair Business Practices Act. For the reason that Defendants MUSL, SWCS, 7-Eleven, and Sharma and its management, agents, and representatives acted knowingly, with intent not to disclose information that a consumer should be informed of such as the cut-off  or closing time to play the Powerball lottery. Thus, Plaintiff is seeking to recover trebled damages and punitive damages from defendants.

     75.     It was a deceptive act or practice for MUSL, its agents, its employees, Commissions, and or its representatives to violate federal and or state laws, affecting commerce:

     a).     By all the ways pled herein in this original petition;

     b).     By its representatives failures to disclose and to misrepresent to the Plaintiff who is a consumers as defined under the statute, the correct information regarding the cut-off or closing time to play the Powerball lottery game;

     c).     By MUSL, agents and representatives violating federal and state civil laws.

     d).     By Defendant SWCS, 7-Eleven, and Sharma agents, employees, and representatives violating federal and state civil laws.

     76.     The above-described actions were committed by Defendants named herein and were committed willfully, wantonly and with reckless disregard for the rights of Plaintiff. The Plaintiff asks this Court for an injunction against MUSL, and that MUSL be ORDERED to pick up all of the playslips for all lotto games nationwide, and ORDER Defendant MUSL to incorporate on its game playslips for the Powerball and other similar games that it administer the cut-off and or closing time for each of their games.

## FIFTH CAUSE OF ACTION

**COUNT 5.**     **FRAUD BY NONDISCLOSURE AND MISREPRESENTATION**

77.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

78.     At all times relevant hereto, Defendant MUSL breached it's aforesaid duty of disclosure by representing, either affirmatively or by omission, that the aforementioned described defects by failing to disclose that the Powerball game playslips did not incorporate the cut-off or closing for the game closure.

79.     MUSL failed to disclose that it does not control its Commissions or even its agents, such as the convenience stores, which in this case is controlled by SWCS, 7-Eleven, and franchise owners such as Defendant Sharma that sell its gaming products. Apparently SWCS and 7-Eleven are not concerned whether or not these convenience store franchises of 7-Eleven and or its employee are truthful to consumers.

80.     Defendant 7-Eleven failed to disclose that the convenience stores with the 7-Eleven logo were not corporate owned but franchises owned by individuals.

81.     Defendant 7-Eleven failed to disclose that it does not have a policy to oversee or control its agents or franchise owners, therefore if a franchise owner hires undocumented/ illegal aliens workers or untrained workers it is of no concern to Defendants SWCS and 7-Eleven.

82.     Defendant Sharma misled and concealed the fact she hired undocumented /illegal aliens workers or they were unreliable and untrained workers who is subject to providing untrue and misleading statements. Sharma failed to supervise these workers.

28

83.    Defendant Sharma had a duty to disclose to the Plaintiff that her employees were untrained, or in training, and Sharma wouldn't supervise these workers. These facts were material in that if proven, Plaintiff could have avoided injury by seeking the information that he requested from another source or store that sells lottery products.

84.    Defendant Sharma was deliberately silent when she new that she hired an employee that was an undocumented/illegal alien worker or that he was untrained and one that she failed to supervise could not be relied on for information or directions.

85.    Defendant 7-Eleven was deliberately silent when the corporate was fully aware that its franchise owners were hiring people who probably were undocumented/ illegal aliens workers, and were poorly trained with possible backgrounds of crimes.

86.    By failing to disclose the aforesaid facts, MUSL, SWCS, 7-Eleven, and Sharma intended to induce Plaintiff to take some action or reframe from acting.

87.    Plaintiff was injured as a result of the Defendants MUSL, SWCS, 7-Eleven, and Sharma conduct as pled herein.

88.    Defendant Sharma never attempted to warn the Plaintiff that some of her employees where in fact undocumented/ illegal alien worker or they where grossly untrained or that she failed to supervise them in their duties. If these fact were disclose to the Plaintiff, which were known to Defendant Sharma, and probably known to Defendants MUSL and 7-Eleven, this information could have easily prevented the Plaintiffs injuries, which were sustained by the Plaintiff on or about August 23, 2017.

89.    Plaintiff reasonably relied on Defendant Sharma employees because they were employees appearing of a highly recognized place of business (7-Eleven stores), and therefore the Plaintiff relied on the employee representations to his detriment as pled

29

herein. Defendants MUSL, 7-Eleven, and Sharma benefited from Plaintiffs' reliance, through purchasing lottery products, and buying other products that a convenience store market and sell such as gasoline, cigarettes, and other products.

90.     As a result, Plaintiff was damaged and injured. Based on the nondisclosure committed by Defendants MUSL, SWCS, 7-Eleven, and Sharma. Plaintiff is entitled to, and hereby requests, a judgment against Defendants MUSL, SWCS, 7-Eleven, and Sharma severally for actual damages, exemplary damages, costs, pre-judgment interest, post-judgment interest, all in amounts to be determined in accordance with applicable law and any other relief that the Court may grant the Plaintiff.

91.     MUSL, SWCS, 7-Eleven, and Sharma violated the duty owed to Plaintiff by failing to exercise reasonable care and competence.

92.     Plaintiff reasonably, and justifiably relied on the misleading information provided by Defendant Sharma. The foregoing acts and omissions described above of the Defendants MUSL, SWCS, 7-Eleven, and Sharma taken separately or collectively, constitute a direct and proximate cause of the Plaintiff's injuries and damages.

## SIXTH CAUSE OF ACTION

**COUNT 6.**   **BREACH OF IMPLIED CONTRACT**

93.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

94.    Pursuant to Georgia state law and federal law, Plaintiff pleads a cause of action against Defendants MUSL, SWCS, 7-Eleven, and Sharma for breach of implied contract.

95.    MUSL is in the business of, among other things, operating lottery games. MUSL's members include the Arizona Lottery, Arkansas Lottery, Colorado Lottery, Connecticut Lottery Corporation, D.C. Lottery, Delaware State Lottery, Florida Lottery, Hoosier Lottery, Idaho Lottery, Iowa Lottery, Kansas Lottery, Kentucky Lottery Corporation, Louisiana Lottery Corporation, Maine Lottery, Minnesota State Lottery, Missouri Lottery, Montana Lottery, Nebraska Lottery, new Hampshire Lottery Commission, New Mexico Lottery Authority, North Carolina Education Lottery, North Dakota Lottery, Oklahoma Lottery, Oregon Lottery, Pennsylvania Lottery, Rhode Island Lottery, South Carolina Education Lottery, South Dakota Lottery, Tennessee Education Lottery, Georgia Lottery, U.S. Virgin Islands Lottery, Wisconsin Lottery, and West Virginia Lottery. Defendant MUSL controls, prints, and oversee the lottery playing slips that it ships to all of the aforesaid states, including the state of Georgia

96.    Every state's Lottery Commissions has a written contract with MUSL, and when a consumer of any of the above named states fill out a Powerball playslip, they also

31

also have an implied contract with MUSL, which it breached its contract with the Plaintiff by not providing the Powerball playslips with the cut-off or closing time for the Powerball game on August 23, 2017.

97.     7-Eleven owns and operates over seven thousand five hundred convenience retail stores in the United States. Each store has MUSL products and other Lottery products for consumers to play. And each of the nearly 8,000 7-Eleven stores has an implied contract with consumers who play the Lottery at their stores. That contract consist of being honest to its customers and as a representative of MUSL and other Lottery Commissions, 7-Eleven has a responsibility not to be deceptive, untruthful, and not to employ individuals who provide misleading and untrue directions to consumers like the Plaintiff.

98.     In order to have a valid implied contract, there must be "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." See *In re Capco*, 669 F.3d at 279-80. In the case at bar, MUSL through Defendants SWCS, 7-Eleven, and Sharma offered the implied contract to all of its patrons when they entered any of 7-Eleven convenience stores by filling out a playslip for the Powerball lottery or any of the other lottery games.

99.     Though the majority of patrons like the Plaintiff were unaware that 7-Eleven stores were mostly franchise owned and that the franchise owners hires undocumented/ illegal aliens workers or workers that are untrained, and unsupervised, nevertheless the 7-Eleven convenience stores are an extension of MUSL contract.

100.    The essential elements of a breach of implied contract action are "the existence of a valid implied contract, performance or tendered performance by the

32

plaintiff, breach of the implied contract by the defendants, and damages resulting from the breach." *Fisher v. Blue Cross & Blue Shield of Tex., Inc.*, 2015 U.S. Dist. LEXIS 127297, 2015 WL 5603711, at \*10 (N.D. Tex. 2015) (citing *Sports Supply Grp., Inc. v. Col. Gas Co.*, 335 F.3d 453, 465 (5th Cir. 2003)).

101.    Georgia's law provides that "[w]here the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time, but unless otherwise agreed may be terminated at any time by either party." But "[t]ermination of a contract by one party . . . requires that reasonable notification be received by the other party." *Id.* § 2.309(c). It does not appear that Defendant MUSL attempted to terminate its contract with the SWCS, and 7-Eleven consumers.

102.    An implied contract "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Lection v. Dyll*, 65 S.W.3d 696, 704 (Tex. App. 2001, pet. denied) (quoting *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 569 (Tex. App. 1989, no writ)). The existence of an implied contract is "inferred from the circumstances." *Id.*

103.    As alleged herein, as a direct and proximate result of Defendants MUSL, SWCS, 7-Eleven, and Sharma conduct it breached the contract with the Plaintiff. The Plaintiff seeks actual and punitive damages against Defendants MUSL, SWCS, 7-Eleven, and Sharma it agents and representatives as alleged herein.

## SEVENTH CAUSE OF ACTION

**COUNT 7.** **FAILURE TO WARN**

104.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

105.    Defendant MUSL had a duty to alert the Plaintiff and the general public who desired to play the Powerball lottery that consumers must contact an authorize Lottery Commission to obtain cut-off or closing times for the Powerball lottery game because this important information is not on the playslips or available by signs in the 7-Eleven stores. *See* **Exhibit 8** (Photograph inside of the 7-Eleven store referenced herein). There are photographs of the entire store during the month of August 2017.

106.    Defendant SWCS and 7-Eleven had a duty to alert the Plaintiff and the general public who desired to fill out a playslip for the Powerball lottery game at any of its nearly 8,000 convenience store locations that the stores are owned by franchise and not corporate owned. Typically, franchise owned businesses have the name of the franchise owner posted in the front of the business.

107.    Defendant Sharma had a duty to alert the Plaintiff and the general public who desired to play the Powerball lottery at her 7-Eleven franchise that she employs undocumented/ illegal aliens workers and or untrained workers who are not supervised.

108.    MUSL, SWCS, 7-Eleven, and Sharma is liable to the Plaintiff because these defendants and its employees, agents, and representatives: 1). "fail[ed] to exercise reasonable care" and "increase[d] the risk of . . . harm" to the Plaintiff by:

   a).    MUSL failing to incorporate the cut-off and or closing time for the Powerball on the back of its game play slips or by signs in the convenience stores;

34

b).    SWCS and 7-Eleven failing to alert the Plaintiff and other consumers of the fact that Defendant Sharma employs undocumented/ illegal alien workers or untrained workers which are not properly supervised;

c).    Failing to alert the Plaintiff and other consumers of the fact that SWCS and 7-Eleven does not monitor or care to monitor whom its franchise owners hire for its employees, including if the franchise owners hires Sharma hires undocumented/ illegal alien workers or untrained workers; and workers who are not supervised that possibly have extensive criminal records;

d).    MUSL Failure to post signs in the convenience stores which MUSL have its gaming products of the cut-off and or closing time for the Powerball lottery, and other lottery games.

109.    The harm was suffered by the Plaintiff because of his reliance on Defendants MUSL, SWCS, 7-Eleven, and Sharma would take reasonable steps to protect him and the general public from fraud, deceptive and unfair conduct, and that all employees were reasonably trained and could speak and understand the English language.

110.    The risk of harm was undoubtedly inherent to the MUSL because it was fully aware that the organization nor any of its agent convenience stores have posters alerting consumers of the cut-off and or closing time for the Powerball lottery game in August of 2017. Defendants MUSL, SWCS, 7-Eleven, and Sharma put profits ahead of informing the Plaintiff and the general public of the cut-off and or closing time to play the Powerball lottery, which was extremely important to playing the Powerball lottery.

111.    Defendant MUSL failed to employ reasonable protection of the general public like the Plaintiff, by failing to take practical provisions of incorporating the cut-off or closing time on the game playslips. The inadequate warnings and lack of warning on the playslips, and failure to employ posters or signs in the convenience stores that carried

35

MUSL gaming products, MUSL failed to warn or caution the Plaintiff and the general public of the cut-off or closing time to play the Powerball lottery game in August of 2017, and as a result, the Plaintiff lost millions of dollars.

112.    MUSL, SCWS, 7-Eleven, and Sharma were negligent, careless, and is guilty of other wrongdoings and actions described herein, which caused Plaintiff to suffer injuries and damages as described with particularity, as described throughout this compliant.

113.    As a direct and proximate cause of the Defendants MUSL, SWCS, 7-Eleven, and Sharma negligence in failing to warn, the Plaintiff suffered emotional pain, and prohibition in participating in the August 2017 Powerball lottery.

## EIGHTH CAUSE OF ACTION

**COUNT 8.    EXEMPLARY DAMAGES AND VICARIOUS LIABILITY**

114.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

115.    Plaintiffs injuries resulted from Defendants MUSL, SWCS, 7-Eleven, and Sharma employees gross negligence, which entitles Plaintiff to exemplary damages.

116.    Defendants MUSL, SWCS, 7-Eleven, and Sharma committed actual malice, and negligence, which entitles Plaintiff to exemplary damages under Georgia State Codes.

36

117.    Plaintiffs injuries resulted from Defendants MUSL, SWCS, 7-Eleven, and Sharma employees gross negligence, malice and the Plaintiff is entitled to exemplary damages as authorized by Georgia State Codes.

## NINTH CAUSE OF ACTION

**COUNT 9.    VICARIOUS LIABILITY**
**PRINCIPAL-AGENT LIABILITY-ACTUAL AUTHORITY**

118.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

119.    Defendant Sharma is a franchise owner of a 7-Eleven convenience store. Defendant Sharma and her employees have actual authority to act on behalf of the Defendants MUSL, SWCS, and 7-Eleven. Defendants MUSL, SWCS, 7-Eleven, and Sharma and its agents, representatives, and Commissions failed to undertake adequate safety measures of making sure that the playslips for the August 2017 Powerball lottery incorporated the cut-off or closing time for the Powerball lottery game. It was imperative that the Plaintiff and other consumers know when the Powerball lottery game closes. However, Defendants MUSL, SWCS, 7-Eleven, and Sharma was negligent in alerting the Plaintiff and other consumers to the cut-off or closing time to play the August 2017 Powerball lottery. Thus, Defendants MUSL, SWCS, 7-Eleven, and Sharma violated Georgia State Codes. Vicarious liability arises from the principal's right of supervision and control over the agent's performance. *Doe v. Forrest,* 176 Vt. 476, 853 A.2d 48 (Vt. 2004) Georgia Power Co. v. Beam, 472 So.2d 619 (Ala.1985). *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). See *Lifestar Response of West Virginia, Inc. v. Admiral Ins. Co.,* 17 So.3d 200, 213 (Ala. 2009). The parties' characterization of their relationship is of no consequence; the facts of the relationship control the issue. *Faragher,* 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

37

## TENTH CAUSE OF ACTION

**COUNT 10.   VICARIOUS LIABILITY**
**PRINCIPAL-AGENT LIABILITY-RESPONDENT SUPERIOR**

120.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

121.    As an employer Defendant MUSL is liable for the actions and employees that it oversee and administer. Defendant SWCS and 7-Eleven is liable for the actions of the franchise owner's actions and its employees. Defendant Sharma is liable for the actions of the undocumented/ illegal aliens workers or untrained workers actions. Defendants MUSL, SWCS, 7-Eleven, and Sharma are vicariously liable for the torts of an employee acting within the scope of employment even though the employer did not personally commit the tort. *Goodyear Tire & Rubber Co., v. Mayes*. Defendant Sharma, franchise owner of the 7-Eleven convenience store in question violated Georgia State Codes. *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298 (2010). The actual harm to Plaintiff occurred while Defendant Sharma and her undocumented/ illegal aliens workers or untrained workers provided Plaintiff with false, misleading, incorrect, deceptive and untrue information while acting within the scope of their employment as set forth herein.

## ELEVENTH CAUSE OF ACTION

**COUNT 11.   VICARIOUS LIABILITY AND AIDING AND ABETTING**

122.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

38

123.    TLC, SWCS, and 7-Eleven conduct aided Defendant Sharma to hide the fact that she hired undocumented/ illegal aliens workers or untrained workers and that the unidentified worker gave the Plaintiff incorrect information regarding the cut-off and or closing time for the Powerball lottery in August of 2017.

124.    Plaintiff claims exemplary damages against Defendants MUSL, SWCS, 7-Eleven, and Sharma through its employees, agents, and representatives. Plaintiff is asserting a vicarious liability claim against Defendants MUSL, SWCS, 7-Eleven, and Sharma.

125.    The Supreme Court recognizes aiding and abetting as a theory for imposing joint liability as in this case. Therefore there is joint vicarious liability regarding MUSL, SWCS, 7-Eleven, and Sharma through its employees, agents, and representatives. *Kinzbach Tool Co. v. Corbett-Wallace Corp.* Since the 1930s, Georgia courts have assumed a defendant can be liable for a tort under the theory of aiding and abetting.

## TWELFTH CAUSE OF ACTION

**COUNT 12.   VICARIOUS LIABILITY AND CONSPIRACY**

126.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

127.    Civil conspiracy pursuant to vicarious acts are a type of participatory liability used to establish join several defendants liability for those who participate in an agreement to commit a tort. Defendants SWCS, 7-Eleven, and Sharma through its em-

ployees, agents, and representatives conspired together to cover up claims the fact that Defendant Sharma had hired undocumented/ illegal aliens workers and or workers untrained and unsupervised at her 7-Eleven franchise convenience store.

## THIRTEENTH CAUSE OF ACTION

**COUNT 13.**   **VICARIOUS LIABILITY**
              **PRINCIPAL–AGENT LIABILITY—RATIFICATION**

128.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

129.   Plaintiff was harmed by the actions of the Defendants MUSL, SWCS, 7-Eleven, and Sharma through its employees, agents, and representatives. Defendant's SWCS, 7-Eleven, and Sharma through its employees, agents, and representatives conspired to cover up claims the fact that Defendant Sharma had hired undocumented/ illegal aliens workers at her 7-Eleven franchise convenience store. Defendant Sharma was committing a federal crime by hiring undocumented/ illegal aliens workers.

## FOURTEENTH CAUSE OF ACTION

**COUNT 14.**   **VICARIOUS LIABILITY**
                 **PRINCIPAL–AGENT LIABILITY—VICE-PRINCIPAL**

130.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

131.   Plaintiff seeks exemplary damages from Defendants MUSL, SWCS, 7-Eleven, and Sharma because of its vicarious liability through its employees, agents, and representatives. Plaintiff claims actual damages, exemplary damages and joint and several liabilities against Defendants MUSL, SWCS, 7-Eleven, and Sharma through its employees, agents, and representatives.

132.   Defendants MUSL, SWCS, 7-Eleven, and Sharma had to have some knowledge of the overt act committed by its agents and representatives or employees as described herein, and even if they didn't it would not alleviate its responsibility or accountability to the Plaintiff for damages.

41

## FIFTEENTH CAUSE OF ACTION

**COUNT 15.   PLAINTIFFS REQUEST A COURT ORDER TO
RESCIND THE AUGUST 2017 POWERBALL LOTTERY**

133.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

134.   On August 23, 2017 the Powerball was $700,000,000.00. Millions of people played that game, being that it was one of the highest Powerball's in history. The Plaintiff who normally does not play Powerball was enticed into playing the lottery game.

135.   Unlike the Plaintiff, Defendant Mavis L. Wanczyk played her numbers on August 23, 2017 for the Powerball game and she alone won the grand prize of Seven Hundred Million dollars. However, the Plaintiff who was not a regular Powerball lottery player did not have the opportunity to play the Powerball on August 23, 2017 because representatives of MUSL, a agent of MUSL (a franchise owner) Defendant Sharma employed an undocumented/ illegal alien worker and or an untrained worker, who provided Plaintiff with the wrong time to play the Powerball lottery in August of 2017. Plaintiff wrote Defendant Wanczyk a letter to inform her of the controversy regarding the August 2017 Powerball lottery, but was unable to serve her. *See* **Exhibits 6** and **7**.

136.   As pled herein, the conduct of Defendants MUSL, SWCS, 7-Eleven, and Sharma were unfair to the Plaintiff in that he wasn't provided the correct cut-off or closing time to play the Powerball lottery.[1]

---

[1] Seifert v. Buhl Optical Co., 276 Mich. 692, 268 N.W. 784, 787 (1936) ("Suit may be brought by parties engaged in a profession or business to enjoin unfair trade and practice which would be injurious to their interests, and the fact that such practices are punishable by criminal penalties is immaterial.")

137.    A sweepstakes or lottery is legal if it discloses the terms and conditions of the contest, the sponsor and the sponsor's address, the odds of winning, and discloses that an alternative free method of entry is available. However in this case, the Defendants MUSL, TLC, SCWS, 7-Eleven, and Sharma failed to provide an important part of playing the August 23, 2017 Powerball lottery, the cut-off or closing time for the game, which is critical to playing the Powerball lottery game. It is not usual for a sweepstakes prize, lottery prize to be rescinded if the organization of the sweepstakes or lottery is guilty of fraud or unfair trade practices as in this case before the Court.

138.    Therefore, the Plaintiff ask the Court as an alternate resolution to this legal matter, to rescind the August 2017 Powerball lottery drawing, because the Plaintiff unlike all other consumers who played the August 2017 Powerball lottery did not have an opportunity to play the Powerball lottery. Further, an even more moving reason to rescind the lottery is that the Plaintiff was prevented from playing his numbers for the August 2017 Powerball lottery by the Defendants actions. The fact that TCL, 7-Eleven, and Sharma did not respond to the letters that the Plaintiff wrote to them signify that they were trying to cover up the fact that the Plaintiff lost millions of dollars and they were responsible for the Plaintiffs damages.

139.    Further, that the Court orders the MSLC to confiscate or seize the remaining funds paid out to Mavis L. Wanczyk until this legal matter is resolved.

43

## SIXTEENTH CAUSE OF ACTION
## DEPRIVATION OF RIGHTS UNDER — 42 USC § 1981

### COUNT 16.   DEPRIVATION OF RIGHTS

140.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

141.   Plaintiff is an African American. MUSL is an association that administers and manages the Powerball lottery and other games, which consist of predominantly white executives. 7-Eleven operate convenience stores worldwide consist of predominantly white executives. Southwest Convenience stores owns and operates 7-Eleven convenience stores in the United States consist of predominantly white executives. Defendant Sharma appears to be from the Country of Indian; however, she considers her race to be white. The acts committed by Defendants MUSL, TLC, SWCS, 7-Eleven, and Sharma its employees, agents and representatives as pled herein deprived the Plaintiff, Drake, a member of a racial minority, of the rights, privileges and immunities guaranteed to citizens of the United States in violation of 42 USC §§ 1981.

142.   The acts complained of were carried out by the aforementioned organizations, companies, and individuals who were employees or representatives of Defendant MUSL, SWCS, 7-Eleven, and Sharma to deprive the Plaintiff of his right to the performance of the implied contract between the Plaintiff and MUSL and its agents.

143.   Defendants MUSL deprived the Plaintiff of the contractual relationship by its refusal and or failure to instruct lottery commissions to incorporate on its Powerball playslips the cut-off and closing time to play the Powerball lottery. 42 USC §1981 states:

44

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . ."

"For purposes of section §1981, the term "make and enforce contracts" includes the ***making***, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

144.    Defendant Sharma prohibited the Plaintiff from playing the August 23, 2017 Powerball lottery because she employed undocumented/ illegal alien workers or untrained and unsupervised workers who told the Plaintiff the incorrect cut-off or closing time for the August 23, 2017 Powerball. Plaintiff desired to make a contract with Defendant MUSL and TLC through Defendant Sharma; however, Plaintiff was not allowed to make his contract with MUSL and TLC to play the August 23, 2017, on account of Defendants MUSL policies and customs and Sharma employee.

145.    Defendants SWCS and 7-Eleven also infringed on the Plaintiff making a contract with MUSL because SWCS and 7-Eleven allowed Defendant Sharma to employ undocumented/ illegal alien workers, and or untrained who were unsupervised by Defendant Sharma who provided the Plaintiff with false and misleading information to his demise. If SWCS and 7-Eleven would have had a more strict guidelines for its franchise owners hiring practices, and if SWCS and 7-Eleven had its own coaching and training program, Defendant Sharma would not had hired undocumented/ illegal alien workers, and or untrained, and the Plaintiff would have known the correct cut-off time, which he would have made his contract with MUSL, thus he would have secured a contract with MUSL, and a split of the $700,000,000.00.

146.    Defendants MUSL, TLC, SWCS, 7-Eleven, and Sharma deprived the Plaintiff    of the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship as pled herein.

147.    Pursuant to §1981, Plaintiff has every right to make and enforce contracts. Plaintiff has shown the Court that if not for Defendants Sharma employee instructing the Plaintiff incorrectly of the cut-off time to play the Powerball, the Plaintiff would have had a contract with MUSL. Plaintiff by this suit is enforcing the contract that he would have had otherwise than the breach, negligence, and violations of the Plaintiffs rights. 42 USC §1981 also protects against impairment by nongovernmental discrimination.

148.    Section 1981 itself protects the right of _all_ persons within the jurisdiction of the United States to "___make and enforce contracts___." 42 U.S.C. § 1981(a).[2] In addition, the rights drawn out in § 1981(a) are protected from "impairment by nongovernmental discrimination," as well out right denial by the statute. 42 U.S.C. § 1981(c).

149.    There is no Eleventh Circuit law on this precise issue, but Plaintiffs claim that impairment of the right to make contracts is congnizable. Other circuits have recognized, even in the era of _Patterson_, that a claim for discriminatory interference with the making of a contract with a third party is covered by § 1981. _See_,e.g., _Daniels v. Local Pipefitters Ass'n Local Union_ No. 597, 945 F.2d 906, 913-916 (7th Cir. 1991).

150.    Further, if § 1981 is to have any teeth, especially in the case at bar, the Plaintiffs need to make the contract with MUSL, is just as important as to enforce the

---

[2]Just to maintain clarity, this court is citing to subsections (a),(b), and (c) of § 1981, and not to the distinct 42 U.S.C. § 1981a.

contract with MUSL. Moreover, Defendants Sharma offer to the Plaintiff of a cup of coffee, when Ms. Sharma's undocumented and untrained employee had caused the Plaintiff millions of dollars, is comparative to permissive racism.

151.    Apparently, TLC and 7-Eleven did not respond to the Plaintiffs letters not only to silence the millions of dollars that the Plaintiff lost, but also because a 7-Eleven franchise owner employed undocumented/ illegal alien workers, and or untrained workers, therefore it was an effort to cover-up this immigration crime. However, on account of the Plaintiff race, he wasn't considered worth the time to respond by TLC or 7-Eleven whose executive team is predominantly white. For all the reasons stated herein, the Plaintiff assert his §1981 claim against the aforesaid Defendants for preventing the Plaintiff to make a contract with MUSL, and to *enforce* the contract that the Plaintiff would have possessed if it were not for the breach and negligence conduct of MUSL, SWCS, 7-Eleven and Sharma.

## SEVENTEENTH CAUSE OF ACTION
## DEPRIVATION OF RIGHTS UNDER — 42 USC § 1983

**COUNT 17.   DEPRIVATION OF RIGHTS**

152.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

153.   The acts committed by Defendant MUSL and TLC and its employees as pled herein deprived the Plaintiff, Drake, a member of a racial minority, of the rights, privileges and immunities guaranteed to citizens of the United States of the Fourteenth Amendment to the United States Constitution in violation of 42 USC §1983. Defendant MUSL qualifies as entity acting under color of state law.

154.   Defendant MUSL and TLC denied Plaintiff an equal opportunity to play the August 23, 2017, Powerball lottery because MUSL failed to instruct and or train its various 47 Lottery Commissions, (TLC) to incorporate the cut-off or closing time for the Powerball lottery closure on the playslips of the Powerball, and to train or instruct its various Lottery Commissions to ensure its partners have the convenience stores 'post' Signs in the stores of the cut-off and closing time to play the Powerball lottery. The various lottery commissions, including the Georgia Lottery Commission cannot make any changes to the playslips without the consent of the MUSL.

155.   There is a causal connection between MUSL's and TLC actions and the harm caused to the Plaintiff. MUSL and TLC policies or customs was the "moving force" behind Plaintiffs deprivation. The MUSL controls and manages over 46 Lottery Commissions, and even though the separate commissions print the playslips and distributes the playslips to the local stores that supports the lottery gaming products and

48

Powerball these Lottery Commissions are unable to make changes in its playslips, on information and belief, without the consent of MUSL.

156.    MUSL failed to train its employees, and or failed to instruct its Lottery Commissions, (TLC) to incorporate the cut-off and closing time on its various Lottery Commissions playslips for the Powerball. MUSL's failure to train or to instruct its Lottery Commissions, (TLC) amounts to deliberate indifference to an obvious need for such training, which there is a need to have the cut-off or closing time incorporated in writing on the back of the playslips, which would prevent its Lottery Commissions and their partners, such as 7-Eleven franchises employees nationwide from making wrong decisions or as in the case at bar, having a new employee to provide a consumer with the wrong information that causes him millions.

157.    MUSL and TLC policies and customs are unconstitutional because those policies infringe upon the rights of the Plaintiff and other consumers to make contracts with the MUSL's many Lottery Commissions as pled.

158.    As a result of the foregoing, Plaintiff Eric Drake is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

49

## SIXTEENTH CAUSE OF ACTION

**COUNT 16.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

159.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

160.   Defendants MUSL through its employees and agents caused infliction of emotional distress upon the Plaintiff. 7-Eleven non-caring approach to its franchise owners created an environment in the 7-Eleven franchise owners of hiring the cheapest possible labor, even undocumented/ illegal aliens or untrained and unsupervised workers. Under those given circumstances, training was implemented by trial and error, because Defendant Sharma did not supervise her employee who gave the Plaintiff incorrect information. Defendant MUSL, 7-Eleven, SWCS, and Defendant Sharma conduct was intentional and reckless and it caused intentional infliction of emotional distress by:

a).   Defendant Sharma extreme and outrageous conduct in exposing the Plaintiff and other 7-Eleven customers to her employee who was an undocumented/ illegal alien that wasn't trained or supervised caused the Plaintiff millions by the employee providing the Plaintiff with the wrong cut-off or closing time to play the August 23, 2017 Powerball lottery.

b).   Defendant 7-Eleven extreme and outrageous conduct in commenting that its franchises hiring of illegal aliens is not there concern, which was the root cause of what occurred to the Plaintiff because Defendant Sharma knew that this conduct of hiring undocumented workers was acceptable to Defendant 7-Eleven. Defendant Sharma apparently wanted to cut her labor cost to increase her profits at the Plaintiff demise;

50

c).     Defendants MUSL extreme and outrageous conduct of making millions on the various lottery games but refusing to instruct the various Lottery Commissions that it manages to incorporate the closing time for the Powerball on the lottery playslips.

d).     Defendants TLC, 7-Eleven, Sharma extreme and outrageous conduct went beyond all possible bounds of decency when they apparently decided not to respond to the Plaintiffs letters in hopes that he would not file a timely claim to the $700,000,000.00 lost because of the gross negligence of an undocumented/ untrained worker and or untrained and unsupervised worker that Defendant Sharma employed in August of 2017;

161.    Defendants extreme, outrageous, negligent conduct through its employees was a proximate cause of the Plaintiff's emotional distress, injuries, and damages as set forth herein.

162.    To sustain an award of punitive damages, Plaintiff must prove, by a preponderance of the evidence, that the Defendants committed a tortious act, and by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent.

163.    Since MUSL and its staff, management, and employees knew that there was no indication of a cut-off or closing time on the playslips for at least 46 Lottery Commissions, which it manages, nor were there Posters, or Signs in the convenience stores that sell lottery products for its Lottery Commissions, so that consumers like the Plaintiff would not know of the cut-off time or closing time for the Powerball lottery.

164.    Therefore, MUSL, SWCS, 7-Eleven, and Sharma were negligent and breached the Plaintiffs rights to play the August 23, 207 Powerball through the Defendants actions or inactions.

165.   Defendant MUSL, SWCS, 7-Eleven, and Sharma's conduct has cause extreme emotional pain. Therefore, the Plaintiff is requesting punitive damages for the emotional distress that the Defendants caused with an intent to harm the Plaintiff by the Defendants.

## DAMAGES

166.   As a direct and proximate result of Defendants' conduct as pled herein, Plaintiff has suffered damages.

167.   Plaintiff has suffered and is continuing to suffer mental anguish on account of Defendants behavior towards him as pled herein. Plaintiff is seeking an order from this Court decreeing that Defendants will pay the Plaintiff damages as set forth herein in this original petition of $2,800,000,000.00 (4 times the Powerball jackpot amount) because of §1981, §1983 and other federal violations as pled herein, gross negligence as pled herein, breach as pled herein, and the Plaintiff was prohibited from having an opportunity to play the August 23, 2017 Powerball lottery as a result of the policies, actions, and conduct of the Defendants named herein.

168.   In addition, Plaintiff by this action, seeks compensatory and punitive damages as pled herein, expert witness fees, cost, interest, and other causes of actions pled herein and for all other monies and damages to which he may be entitled and:

- Attorneys' fees for preparation and trial;
- Attorneys' fees if there is to be an appeal to the Court of Appeals;
- Attorneys' fees if there is to be an appeal to the U.S. Supreme Court;
- Incidental damages;
- Past mental anguish;
- Future and past emotional distress;

1. Trebled damages for knowingly and willfully causing harm to the Plaintiff;

2. Plaintiff respectfully requests that the Court grant additional damages as already pled herein and for declaratory judgment and other causes pled herein.

## ATTORNEYS' FEES, COSTS & INTEREST

169. Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

170. Plaintiff hereby sues for the recovery of reasonable attorneys' fees, costs of court and pre-and post-judgment interest at the highest rates to which he is entitled.

## REQUEST FOR JURY TRIAL

171. Plaintiff hereby requests a jury trial on all matters set forth in his original petition as pled to this Honorable Court.

## PARYER FOR RELIEF

172. Plaintiff prays for a judgment against Defendants ETBI and Travelers and it agents, employees, lawyers, and representatives and each of them as follows:

1. Special damages for Plaintiff in the amount of $700,000,000.00;

2. General damages for Plaintiff in an amount to be determined at trial;

3. Punitive Damages in an amount to be determined at trial;

4. Cost of suit;

5. Attorney fees for preparation and trial;

6. Attorney fees if there is to be an appeal to the U.S. Supreme Court;

53

7.    Incidental damages;

8.    Past and future emotional distress;

9.    Trebled damages for willfully causing harm to the Plaintiff;

10.   Prejudgment interest;

11.   Injunctive and Declaratory Relief;

12.   For such other and further relief as the court deems just and proper.

## **PRAYER**

173.   WHEREFORE PREMISES CONSIDERED, Plaintiff hereby prays that he is awarded compensatory damages, reasonable attorneys' fees, costs of court and pre-judgment and post-judgment interest at the highest rates to which he is entitled to receive; and for such other proper relief to which Plaintiff is entitled.

174.   Plaintiff further request the Court to grant such other and further relief as the Plaintiff as prayed for in its entirety and as it appears reasonable and just, to which he may shows himself entitled.

Respectfully submitted,

V. Drake
400 E. Waring Street, 109
Waycross, GA 31501
912-281-7100
legal.litigation.org@gmail.com

54

PRIORITY MAIL EXPRESS

EJ 064 675 796 US

**FROM:**
400 E. Waring St.
Waycross, GA. 31501



U.S. POSTAGE PAID
PME 1-DAY
DALLAS, TX
75229
AUG 22 19
AMOUNT
**$25.50**
R2304H109356-01

1007  31401

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
☑ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO

PO ZIP Code: 75229
Scheduled Delivery Date: 8/23/19
Postage: $25.50

Date Accepted: 8/22/19
Scheduled Delivery Time: ☐ 3:00 PM ☑ 12 NOON
Insurance Fee   COD Fee

Time Accepted: 1:43 ☐ AM ☑ PM
10:30 AM Delivery Fee   Return Receipt Fee   Live Animal Transportation Fee

Weight: 13 oz  ☑ Flat Rate   Total Postage & Fees: $25.50

**DELIVERY OPTIONS (Customer Use Only)**
☑ SIGNATURE REQUIRED
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)
☐ 10:30 AM Delivery Required (additional fee, where available)

**TO: (PLEASE PRINT)**   PHONE ( )
U.S. District Court
Attn: Clerk of Court
125 Bull St.
Savannah, GA. 31401

ZIP + 4® (U.S. ADDRESSES ONLY)
3 1 4 0 1 - _ _ _ _

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)  Time ☐ AM ☐ PM  Employee Signature
Delivery Attempt (MM/DD/YY)  Time ☐ AM ☐ PM  Employee Signature

LABEL 11-B, MARCH 2019   PSN 7690-02-000-9996

FOR INTERNATIONAL USE
ATTACH LABEL HERE

Cleared
U.S. District Court

PEEL FROM THIS CORNER

scan the QR code.





USPS.COM/PICKUP

P S 1 0 0 0 1 0 0 0 0 0 6

EP13F Oct 2018
OD: 12 1/2 x 9 1/2

 

- Signature included upon request.
- When used internationally, a customs declaration label may be required.

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select International destinations. See DMM and IMM at pe.usps.com for complete details.
‡ Money Back Guarantee for U.S. destinations only.  ⁂ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

This envelope is made from post-consumer waste. Please recycle - again.